UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUBIN TEMAHAGARI,<br><br>               Petitioner,<br><br>   v.<br><br>PAMELA BONDI et al.,<br><br>              Respondents. | CASE NO. 25-cv-02484-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Rubin Temahagari's Petition for a Writ of Habeas Corpus. Dkt. No. 1. For the reasons stated below, the Court grants in part and denies in part Temahagari's petition.[1]

### I.    BACKGROUND

Temahagari is a native of the Democratic Republic of the Congo ("DRC") who entered the U.S. as a refugee in 2013 when he was 15 years old. Dkt. No. 1 at 6.

In August 2014, he was convicted as a juvenile in King County Superior Court of Felony Robbery in the Second Degree and sentenced to 15 to 36 weeks of confinement at the Juvenile Rehabilitation Administration Center. *Rubin v. U.S. Immigr. & Customs Enf't Field Off. Dir.*, No.

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

2:24-cv-00260-TL ("*Rubin III*"), Dkt. No. 10 at 2 (W.D. Wash. June 28, 2024).[2]

In 2019, Temahagari pleaded guilty in the United States District Court for the Western District of Washington to Felon in Possession of a Firearm and Retaliating Against a Witness and was sentenced to a total of 51 months in prison, followed by three years of supervised release. Dkt. No. 1 at 6; Dkt. 14-1 at 2; *USA v. Rubin*, 2:16-cr-00278-JCC, Dkt. No. 93 (W. D. Wash. 2019); *USA v. Rubin*, 2:18-cr-00005-JCC, Dkt. No. 45 (W.D. Wash. 2019). On March 4, 2019, he was convicted of Felony Robbery in the First Degree in King County Superior Court and sentenced to 40 months of imprisonment to run concurrently with his federal sentences. *Rubin III*, Dkt. No. 10 at 2–3.

On June 1, 2021, U.S. Immigration and Customs Enforcement ("ICE") Office of Enforcement and Removal Operations ("ERO") served Temahagari with a Notice to Appear ("NTA") charging him as removable under (1) Section 237(a)(2)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(C), for having been convicted, at any time after admission, of any law relating to possession or carrying a firearm as defined under 18 U.S.C. § 921(a); and (2) Section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted, any time after admission, of an aggravated felony as defined under INA § 101(a)(43)(E), 8 U.S.C. § 1101(a)(43)(E), to include a conviction of a firearms offense under 18 U.S.C. § 922(g)(1). *Id.* at 3; Dkt. No. 14-1 at 2. Temahagari was placed in removal proceedings. *Rubin III*, Dkt. No. 10 at 3. He applied for relief from removal with the assistance of counsel. *Id.*

Upon Temahagari's release from prison in August 2021, ICE detained him in a facility in Adelanto, California, near where he had served his prison term. Dkt. No. 14-1 at 2. On October 18, 2021, at Temahagari's counsel's request, the immigration judge ("IJ") overseeing the removal

---

[2] Temahagari filed a habeas petition in February 2024 in *Rubin III* seeking immediate release from detention or a bond hearing because his detention violated his Fifth Amendment due process rights. *See id.* at 1, 6. The Court takes judicial notice of the record in that case.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

proceedings conducted a competency hearing and found Temahagari competent to proceed. *Id.* at 3. In February 2022, he appeared for a bond hearing with his counsel. *Id.*; *Rubin III*, Dkt. No. 10 at 3.[3] The IJ denied bond, finding by clear and convincing evidence that Temahagari was a danger to the community. Dkt. No. 14-1 at 3; *Rubin III*, Dkt. No. 10 at 4. On April 13, 2022, the IJ issued a written decision denying him relief from removal proceedings and ordering him removed to the DRC. *Id.*

Temahagari appealed the denial of his application for relief to the Board of Immigration Appeals ("BIA"), which dismissed the appeal, and then to the Ninth Circuit, which remanded the case back to the BIA in January 2023 based on an unopposed motion from the Government. Dkt. No. 14-1 at 4; *Rubin III*, Dkt. No. 10 at 4–5.

On November 7, 2023, the U.S. Department of Homeland Security ("DHS") transferred Temahagari from California to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he is currently detained. Dkt. No. 14-1 at 5; *Rubin III*, Dkt. No. 10 at 5; *see* Dkt. No. 1 at 2.

On January 29, 2024, Temahagari (through counsel) filed a motion to remand the case from the BIA to the IJ for further factfinding. *Rubin III*, Dkt. No. 10 at 5. On April 11, 2024, the BIA granted the motion, stating that because "[t]he [IJ]'s finding that DHS did not meet its burden to establish that the respondent was admitted to the United States is inconsistent with his finding that the respondent is removable as charged," the BIA would remand for additional factfinding "on the issue of the respondent's admission to the United States and whether he is removable as charged." *Id.* (quoting *Rubin III*, Dkt. No. 8-14).

---

[3] The dates of events reported by the Deportation Officer's declaration that Respondents submitted in this case conflict with many of those contained in the Report and Recommendation in *Rubin III*. *Compare* Dkt. No. 14-1 *with Rubin III*, Dkt. No. 10.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

On May 13 and 14, 2024, on remand to the IJ, DHS filed additional evidence and documents to address the deficiencies noted in the BIA's April 2024 order. Dkt. No. 14-1 at 4. On May 15, 2024, Temahagari argued (through counsel) that he was entitled to a new hearing on his applications for relief based on the remand and changed circumstances. *Id.*

In February 2024, while the above proceedings were ongoing, Temahagari filed a pro se petition for a writ of habeas corpus in *Rubin III*. *Rubin III*, Dkt. No. 1. In June 2024, Magistrate Judge Fricke issued a report and recommendation finding that he was detained under Section 1226(c), and that his continued detention under that section was warranted because "[a]lthough a significant amount of time ha[d] passed since [Temahagari's] last bond hearing" in February 2022, he had failed to show "a material change in circumstances that would warrant a new bond hearing[.]" *Id.*, Dkt. No. 10 at 9, 16. District Judge Lin adopted the R&R. *Id.*, Dkt. No. 11.

In June 2024, Temahagari's counsel in the removal proceedings successfully moved to withdraw without objection from his client. Dkt. No. 14-1 at 5.[4] Temahagari thus became a "class member pursuant to the *Franco-Gonzalez v. Holder* class action litigation," entitling him to another bond hearing. *Id.*[5] On July 1, 2024, DHS requested a bond hearing under the *Franco* standards, but the immigration court indicated that it would not schedule a bond hearing until a "judicial competency inquiry" was completed. Dkt. No. 14-1 at 5. That inquiry occurred on July 16, 2024, and resulted in a finding by an IJ that Temahagari was "not competent to represent

---

[4] Deportation Officer Arambula states that the IJ granted the motion to withdraw in 2025, Dkt. No. 14-1 at 5, which is nonsensical given the chronology that follows. This is not the only discrepancy regarding dates in his declaration, which significantly detracts from its reliability. Even if the motion to withdraw were granted in 2025, it would not affect the outcome here.

[5] The *Franco-Gonzalez* class action litigation resulted in a permanent injunction requiring that the federal government provide "Qualified Representatives" to a class encompassing unrepresented individuals detained by DHS who were not mentally competent to represent themselves in detention or removal proceedings. *See Franco-Gonzales v. Napolitano*, No. CV-10-02211-DMG-DTBx, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) (certifying class); *Franco-Gonzalez v. Holder*, No. CV 10-02211-DMG-DTBx, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) (granting permanent injunction); *Franco-Gonzalez v. Holder*, No. CV-10-02211-DMG-DTBx, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014) (setting forth further details on permanent injunction including screening system and evaluation standards).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

himself in proceedings[.]" *Id.* Accordingly, the IJ ordered the appointment of a Qualified Representative ("QR"). *Id.*

In August 2024, DHS amended the allegations in Temahagari's NTA. *Id* at 6. Deportation Officer Arambula's declaration states that on October 17, *2025*, Temahagari appeared for his reset master hearing with his QR. *Id.* However, this appears to be yet another mistaken date, as the declaration goes on to say that Temahagari was ordered removed in *April* 2025. *Id.* The Court assumes that the reset master hearing to which Arambula refers occurred on October 17, *2024*.[6] On that date, the IJ found Temahagari removable as charged. Temahagari's case was then sent back to his first immigration judge from Adelanto, California, for "his reset individual hearing on the merits[.]" *Id.* Also on October 17, 2024, Temahagari (through his QR) filed a *Franco* bond hearing request. The hearing was held on October 24, 2024,[7] and the IJ found that he was a danger and a flight risk by clear and convincing evidence. *Id.*

On April 15, 2025, the Adelanto immigration judge issued a written decision ordering Temahagari removed to DRC but granting deferral under the Convention Against Torture. Dkt. No. 1 at 3.[8] Neither party appealed, so Temahagari's removal order became final on May 15, 2025. Dkt. No. 1 at 3.

Temahagari "remains detained at NWIPC under INA § 241 [(8 U.S.C. § 1231)] as [a noncitizen] with a final removal order." Dkt. No. 14-1 at 7. On November 25, 2025, a Deportation Officer held a custody review for Temahagari "about third country removal options and where he

---

[6] Even if the hearing had taken place on October 17, 2025, it would not affect the outcome here.

[7] Again here, Arambula's declaration states that the hearing took place in 2025, which seems to be mistaken given the chronological order of the declaration. The Court assumes that the hearing took place on October 24, 2024. Even if the hearing had taken place on October 24, 2025, it would not affect the outcome here.

[8] In his declaration, Deportation Officer Arambula contends that that the IJ issued his removal order on April 24, 2025, and the order became final on May 24, 2025. Dkt. No. 14-1 at 7. Because Respondents neglected to attach relevant portions of Temahagari's A-File to their filings, the Court is unable to verify the accuracy this and other assertions in Arambula's declaration. Because of this failure on the part of Respondents, the Court defers to the dates provided by Temahagari. Dkt. No. 1 at 3. Even if Respondents provided the correct dates, it would not affect the outcome here.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

may have family" and notified Temahagari's QR of "potential third country removal in this case." *Id*; *see also* Dkt. No. 1 at 7.[9] The Deportation Officer told Temahagari that because he could not be deported to DRC or to any other country at the time, the Officer "would recommend his release on conditions." Dkt. No. 1 at 7. "On the same day, Tacoma ERO requested guidance from ERO HQ on third country removal in this case." Dkt. No. 14-1 at 7. Respondents provide no additional facts regarding the prospects of third country removal. *See generally* Dkt. No. 14-1.

In total, Temahagari has been detained by ICE for over 250 days since the removal order became final on May 15, 2025.

On December 5, 2025, Temahagari (through counsel) filed his petition for habeas corpus. Dkt. No. 1. Respondents[10] filed a return accompanied by a declaration, and Temahagari filed a traverse. Dkt. Nos. 12, 15.

## II.    DISCUSSION

In his petition, Temahagari asserts three grounds for relief: (1) Respondents have violated his Fifth Amendment Due Process right by indefinitely detaining him; (2) Respondents have violated the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, and implementing regulations with respect to his potential third country removal; and (3) Respondents' third country removal practices violate the Fifth and Eighth Amendments. Dkt No. 1 at 15–18.[11]

---

[9] Deportation Officer Arambula contends that this review took place on November 24, 2025. Dkt. No. 14-1 at 7. Again, because Respondents neglected to submit supporting evidence to facilitate the Court's verification of their assertions, the Court defers to the date asserted by Temahagari. Dkt. No. 1 at 7. However, even if the review had taken place on November 24, 2025, it would not affect the outcome here.

[10] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[11] The Court does not consider factual averments in the habeas petition that are not supported by citations to the record or supporting authority. *See, e.g.*, Dkt. No. 1 at 12–14 (allegations regarding third country removals and an ICE

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

For these alleged violations, he seeks (1) immediate release; (2) an order preventing Respondents from re-detaining him "without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since [he] was previously released"; and (3) an order barring Respondents from removing him to any third country or, alternatively, barring them from removing or seeking to remove him "to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings[.]" *Id.* at 18–19.[12]

A.  **Legal Standards**

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Ben-Sholom v. Ayers*, 674 F.3d 1095, 1099 (9th Cir. 2012).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1052 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation[.]" *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S.

---

memorandum devoid of any supporting citations).

[12] Temahagari does not seek this relief in the alternative, but if the Court granted the former prohibition, the latter would serve no purpose.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

**B.    The Court Grants Temahagari's Request for Release**

In this case, it is undisputed that Temahagari's continued detention is not "presumptively reasonable" under *Zadvydas* because he has been detained by ICE for over eight months after his

removal order became final. *Zadvydas*, 533 U.S. at 701.

Temahagari provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* It is undisputed, *see* Dkt. No. 1 at 15; Dkt. No. 12 at 6, that he cannot be deported to his country of origin because the immigration judge granted deferral of removal to DRC under the Convention Against Torture. *See* 8 C.F.R. §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). It is also undisputed that Respondents could feasibly deport Temahagari to a third country pursuant to 8 U.S.C. § 1231(b)(2)(E)(vii). *See* Dkt. No. 1 at 8; Dkt. No. 12 at 3. However, when Deportation Officer DeCastro held a custody review in November 2025, he told Temahagari that because he could not be deported to the DRC "or, at present, to any other country," Officer DeCastro would recommend his release on conditions. Dkt. No. 1 at 7. Furthermore, Temahagari avers that "it appears that no effort has been made to persuade a third country to accept him." *Id.* at 15. "Courts routinely find that noncitizens under such circumstances have met their initial burden under *Zadvydas*." *Elshourbagy v. Bondi*, No. 2:25-cv-02432-TL, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025) (collecting cases).

Because Temahagari has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents offer that they are "currently reviewing options for third country removal." Dkt. No. 12 at 3, *see also* Dkt. No. 14-1 at 7. But they do not contest that Deportation Officer DeCastro told Temahagari that he could not be deported to the DRC "or, at present, to any other country[.]" Dkt. No. 1 at 7; *see generally* Dkt. No. 12. This is insufficient to show that removal to a third country is likely in the reasonably foreseeable future. "Courts in this circuit have regularly refused to find Respondents' burden met

where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).

Respondents also argue that under *Zadvydas*, when—as here—the purpose of detention is community safety, the justification for detention "does not necessarily diminish in force over time." Dkt. No. 12 at 5–6. (quoting *Zadvydas*, 533 U.S. at 690–91).[13] But at least two circuit courts, including the Ninth Circuit, have rejected the argument that *Zadvydas* permits different treatment of mentally ill or dangerous noncitizens. In *Tuan Thai v. Ashcroft*, the Ninth Circuit concluded that "[a noncitizen's] ill mental health coupled with dangerousness cannot justify indefinite detention under *Zadvydas*[.]" 366 F.3d 790, 798 (9th Cir. 2004); *see also id.* at 797 (noting that the detainees at issue in *Zadvydas* were "a resident alien with a long criminal record whose continued detention by the Government was based on a history of flight from both criminal and deportation proceedings" and "a resident alien who had been convicted of manslaughter for a gang-related shooting," yet the Supreme Court held that Section 1231(a)(6) "simply did not authorize [a noncitizen's] potentially indefinite detention, even if such detention were premised on 'protecting the community from dangerous aliens'" (quoting *Zadvydas*, 533 U.S. at 697)). And in *Tran v. Mukasey*, the Fifth Circuit rejected the government's argument that "the presumptive six-month period identified by the *Zadvydas* court is merely a presumption that may be rebutted with a showing that special circumstances exist, i.e., a showing that the alien is mentally ill and dangerous," and held that "there is but one method for overcoming the six-month presumption: the government must furnish evidence which shows that there is significant likelihood of removal in the foreseeable future." 515 F.3d 478, 484 n.4 (5th Cir. 2008). In rejecting Respondents'

---

[13] As Temahagari astutely points out, Respondents took the opposite position on this point in a recent filing in another case. *See Kuot v Bondi*, No. 2:25-cv-02313-BAT, Dkt. No. 14 at 10 n.5 (W.D. Wash. Dec. 3, 2025) ("Petitioner's references to whether he poses a risk of flight or danger to the community are completely irrelevant. The only proper consideration under *Zadvydas* is whether there is a significant likelihood of removal in the reasonably foreseeable future[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

proffered justifications for Temahagari's detention, the Court does not intend to imply that his crimes are not serious crimes; it simply concludes that under binding Circuit and Supreme Court precedent, they do not justify his indefinite detention. As other courts have observed, "concern[s] about the safety of the community can be addressed through the conditions of supervision imposed on Petitioner upon his release." *Vishal v. Chestnut*, No. 1:25-CV-01469-SAB-HC, 2025 WL 3511815, at *4 (E.D. Cal. Dec. 8, 2025).

Because Respondents have failed to rebut Temahagari's showing that there is no significant likelihood of removal in the reasonably foreseeable future, he is entitled to release under *Zadvydas*.

**C.  The Court Grants Temahagari's Request for Certain Due Process Protections Relating to Third Country Removal**

Temahagari requests an order barring Respondents from removing or seeking to remove him "to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings[.]" Dkt. No. 1 at 18–19. He argues that such an order is necessary because "Respondents have developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the INA for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court." *Id*. at 12.

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Id.* at 941–42. A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Temahagari's petition makes much of the government's third country removal policies, but it does not actually allege that he is at risk of removal to a third country. *See generally* Dkt. No. 1. Indeed, he asserts the opposite, averring that "ICE has promised Mr. Temahagari that he will not be deported [to] a third country[.]" *Id.* at 15. However, in their return to the petition, Respondents volunteer that DHS is "currently reviewing options for third country removal," and that any such removal will follow DHS guidance issued in March and July 2025. Dkt. No. 12 at 3–5; *see also id.* at 12–13 (disagreeing with Temahagari that application of the guidance to his third country removal would violate his due process rights). Temahagari is therefore subject to a "cognizable danger" of due process violations stemming from defective process in a third country removal. *Cummings*, 316 F.3d at 897. While this issue was not raised in the usual manner, both parties have now addressed Temahagari's potential removal to a third country, Dkt. Nos. 1, 12, and the issue is

appropriately before the Court.[14]

The Court begins by noting its serious concerns with Respondents' arguments here. At the same time that Respondents contend they "are entitled to a presumption of regularity," Dkt. No. 12 at 18, they argue that Temahagari is subject to the entry fiction, *id.* at 16–17. But Respondents' previous representations to this Court preclude them from asserting the latter argument. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (describing issue preclusion). Specifically, less than two years ago in *Rubin III*, Respondents prevailed on their argument that Temahagari was detained under 1226(c), which "applies to [noncitizens] *already present* in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (emphasis added); *Rubin III*, Dkt. No. 6 at 1 ("U.S. Immigration and Customs Enforcement ('ICE') lawfully detains [Temahagari] pursuant to Section 236(c) of the Immigration and Nationality Act ('INA'), codified at 8 U.S.C. § 1226(c)[.]"); *id.* at 12 ("Once he receives a final order of removal, [Temahagari]'s mandatory detention status under Section 1226 will cease."); *see also Gregorio-Chacon v. Lynch*, No. CV-16-2768 (SDW), 2016 WL 6208264, at *2 (D.N.J. Oct. 24, 2016) ("While § 1226(c) controls the detention of aliens who have effected entry into this country and are now removable based on their having committed a felony, 8 U.S.C. § 1225(b)(2)(A) provides that an arriving alien is considered 'an applicant for admission' and that such applicants for admission must be detained for removal proceedings[.]"). The "presumption of regularity" is dislodged here by the numerous factual errors in Respondents' filings and by their conflicting representations to the Court between *Rubin III* and this case. Even if the Court were to apply the presumption of regularity, the result here would be the same.

---

[14] Temahagari also requests an order prohibiting Respondents from "remov[ing him] to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm[.]" Dkt. No. 1 at 16. However, the record contains no evidence of a genuine threat of such punitive removal against *him*. The Court therefore cannot conclude "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings*, 316 F.3d at 897 (quoting *W.T. Grant Co.*, 345 U.S. at 633); *see also Francisco Lorenzo v. Bondi et al.*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *6 n.6 (W.D. Wash. Jan. 29, 2026).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

Respondents make two arguments against the issuance of injunctive relief requiring that they provide Temahagari with notice and an opportunity to respond prior to third country removal. First, they argue that Temahagari is barred from seeking injunctive relief from this Court because he is a class member subject to the preliminary injunction, and the Supreme Court's subsequent stay of that injunction, in *D.V.D.* v. *Department of Homeland Security*. Dkt. No. 12 at 6–12; *see D.V.D.* v. *Dep't of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass.) (issuing preliminary injunction); *see Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (staying preliminary injunction). The Court has recently issued an order in a different case addressing this argument and concluding that the petitioner's claims were not barred by *D.V.D. See Francisco Lorenzo*, 2026 WL 237501, at *6–8. For purposes of judicial economy, the Court incorporates that analysis here. Suffice it to say that Temahagari's "request relating to third country removal is part and parcel of his time-sensitive habeas petition," and the Court may therefore grant relief notwithstanding *D.V.D. Id.* at *8; *see also Nguyen*, 796 F. Supp. 3d at 729–30; *Elshourbagy*, 2025 WL 3718993, at *7 (collecting cases holding the same).

Second, Respondents argue that Temahagari is not entitled to relief on the merits because DHS's March 30 and July 9 Memoranda (regarding the agency's current procedures for implementing the Convention Against Torture, *see* Dkt. Nos. 12-1, 12-2) are consistent with due process requirements. Dkt. No. 12 at 12–19.[15] The Court's above-referenced recent order also considered similar arguments and found that the "policies guiding Respondents' planned removal of [Temahagari to a third country] simply do not comport with due process." *Francisco Lorenzo*, 2026 WL 237501, at *9; *see also Escobar v. Chestnut*, No. 1:25-CV-01801-DJC-EFB, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy,

---

[15] In assuring the Court that Temahagari will continue to have adequate due process moving forward, Respondents state that Temahagari "has already successfully obtained protection from removal to his home country of Afghanistan in withholding-only proceedings before an Immigration Judge." Dkt. No. 12 at 13. Temahagari is from the DRC.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)).

The guidance in the July 9 Memorandum allows ICE to remove a noncitizen without any notice if the government receives credible assurances from the country of removal that removed noncitizens will not be persecuted or tortured. Dkt. No. 12-2 at 1–2. If the country of removal has not provided such assurances, the policy instructs ICE to wait 24 hours (or as few as six hours in "exigent circumstances") between providing notice of removal to a third country to the noncitizen and removal of that noncitizen. *Id.* at 2. If the noncitizen does not affirmatively state a fear of persecution or torture in that country during that period (ICE will not ask), ICE will remove the noncitizen. *Id.* at 3. If the noncitizen does state a fear of being removed to the third country, ICE will refer the case to U.S. Citizenship and Immigration Services ("USCIS") for an eligibility screening for protection under 8 U.S.C. § 1231(b)(3). *Id.* USCIS will then "determine whether the [noncitizen] would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." *Id.* If the noncitizen does not meet this standard, ICE will remove them; if they do meet the standard, USCIS will refer the matter to immigration court for further proceedings. *Id.* "Alternatively, ICE may choose to designate another country for removal." *Id.*

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "[A] basic tenet of constitutional due process" is "that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for . . . withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Id.*; *see also*

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15

*Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting *Andriasian*, 180 F.3d at 1041)). Accordingly, "a noncitizen must be given sufficient notice of a country of deportation [such] that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen*, 796 F. Supp. 3d at 727 (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). The policies described in the ICE memoranda that Temahagari challenges do not comport with these requirements, as they allow deportation to a third country without any notice at all or with no more than 24 hours' notice, which is insufficient time for a noncitizen—especially one whose mental illness required him to have a QR—"to contact counsel, research conditions in the designated country, and prepare for the interview." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *4 (W.D. Wash. Nov. 17, 2025).

In light of the foregoing, Temahagari has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. He has demonstrated some "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the "public interest would not be disserved by a permanent injunction." *Id.*

D.   **The Court Otherwise Denies Temahagari's Request for Injunctive Relief**

As noted above, Temahagari requests that the Court issue an order preventing Respondents from re-detaining him "without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and

convincing evidence based on changed circumstances since [he] was previously released[.]" Dkt. No. 1 at 18.

Nowhere in Temahagari's petition does he allege that redetention is likely, or that such detention is likely to occur without a hearing. *See generally* Dkt. No. 1. Without evidence that unlawful redetention is likely to occur, Temahagari's speculation constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified); *see also Kuot v. Bondi*, No. 2:25-CV-02313-BAT, 2025 WL 3763930, at *4 (W.D. Wash. Dec. 30, 2025) ("[T]he Court declines to grant Petitioner's request which would require a pre-redetention determination, no matter the circumstances, before he could be taken into custody."). For this reason, his request for injunctive relief preventing his re-detention is denied.

### III.    CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART. The Court ORDERS as follows:

1. Respondents shall immediately release Temahagari from custody subject to conditions compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3)).")

2. The Parties shall file a Joint Status Report by February 10, 2026, confirming that Temahagari has been released.

3. Respondents shall not remove or seek to remove Temahagari to a third country without affording him meaningful notice and an opportunity to respond in conformity with 8 U.S.C. § 1231(b) and due process.

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.*

*Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 9th day of February, 2026.

Lauren King
United States District Judge